215 N.J. Super. 84 (1987)
521 A.2d 357
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DANIEL GARDNER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 17, 1986.
Decided February 4, 1987.
*86 Before Judges FURMAN, DREIER and STERN.
Philip De Vencentes argued the cause on behalf of appellant (Galantucci & Patuto, attorneys; Philip De Vencentes on the letter brief).
Gerard Boruch, Deputy Attorney General, argued the cause on behalf of respondent (W. Cary Edwards, Attorney General, *87 attorney; Raymond S. Gurak, Deputy Attorney General, of counsel).
The opinion of the court was delivered by STERN, J.A.D.
Defendant, a volunteer fireman, pled guilty to third degree arson in violation of N.J.S.A. 2C:17-1b. Defendant admitted setting a fire to an abandoned building in Franklin Township, Somerset County, with two other volunteer firemen. In entering his plea, defendant stated, "Sir, we were out drinking that night. We came to the house. We saw the house on Davidson Avenue and we went up and we lit the house with the intent to put the fire out. We went to the firehouse." Defendant also admitted that he and the others "burned the building."[1]
*88 The sentencing judge recognized that, as a first offender, defendant was entitled to the presumption against imprisonment embodied in N.J.S.A. 2C:44-1e, but found that the presumption was overcome. The judge concluded that because defendant was a volunteer fireman his crime took on added significance, and he was sentenced to an indeterminate term at the Youth Correctional Institution Complex. See N.J.S.A. 2C:43-5. The judge gave the following reasons for his sentence pursuant to R. 3:21-5:
The facts of this case are relatively clear. You and your co-defendants who are all members of a volunteer fire department, had been drinking on the night of the incident. You were apparently on your way to the fire house, observed the abandoned building, decided to set it on fire, drove to the fire house, got some gasoline and then went back to the abandoned house and set it on fire.
Needless to say, this reckless act exposed other volunteer fire fighters and policemen who responded to the alarm, to the risk of serious injury and there is clear need to deter this conduct.
In mitigation I note you have no prior record and you are likely to respond affirmatively to supervision.
Arson takes a tremendous toll in human life and property damage. It is not a mere prank, nor can the risk it causes be excused by saying that the arsonist had been drinking or was drunk. In this case, while you and your co-defendants may have been drinking, you were sober enough to go the fire house to get gasoline and return to the scene and start the fire.
The seriousness of the risk of harm and the need to deter not only outweighs the mitigating factors but overcomes the presumption of non-incarceration.
Prior to the imposition of sentence, the court also emphasized:
There is no one in this courtroom who isn't aware, unless they are blind or deaf, of the tremendous loss of human life caused by fire. When one who takes on, for whatever reason, voluntary or pay, to fight fire and then becomes involved in actually starting fire, it must be made clear that we will not tolerate this. We have enough problems with the fires for which no human is responsible for, lightning, spontaneous combustion. We are not going to tolerate fires which are caused by humans. I feel the need to deter is very strong.
As the exclusive question on this appeal relates to the sentence imposed, our function is a limited one:
In sum, ... appellate review of a sentencing decision calls for us to determine, first, whether the correct sentencing guidelines, or in this case, presumptions, have been followed; second, whether there is substantial evidence in the record to support the findings of fact upon which the sentencing court based the application of those guidelines; and third, whether in applying those guidelines to the relevant facts the trial court clearly erred by reaching a *89 conclusion that could not have reasonably been made upon a weighing of the relevant factors. [State v. Roth, 95 N.J. 334, 365-366 (1984)].
As we have noted, the sentencing judge recognized that the presumption against imprisonment is applicable. That presumption, N.J.S.A. 2C:44-1e, provides:
The court shall deal with a person convicted of an offense other than a crime of the first or second degree, who has not previously been convicted of an offense, without imposing sentence of imprisonment unless, having regard to the nature and circumstances of the offense and the history, character and condition of the defendant, it is of the opinion that his imprisonment is necessary for the protection of the public under the criteria set forth in subsection a [of N.J.S.A. 2C:44-1].
As appellate judges "[w]e must avoid the substitution of appellate judgment for trial court judgment"; we may only correct or modify an illegal sentence or a "judgment that reasonable people may not reasonably make on the basis of the evidence presented...." State v. Roth, supra, 95 N.J. at 365. The presumption against imprisonment, like the presumption of imprisonment, is designed to promote uniformity and avoid disparity. The former can be overcome only when there is evidentiary support for the conclusion that the nature and circumstances of the offense and the history, character and condition of the defendant require incarceration for the protection of the public.
The sentencing judge believed that potential arsonists would not be deterred if they knew that a volunteer fireman received a noncustodial sentence after committing arson. The judge concluded that protection of the public required deterrence of potential arsonists and that the lack of a custodial sentence in this case might well give the impression that, notwithstanding the dangers attendant to fire, there was no significant penal sanction to be imposed as a result of burning a building.
We recognize that the presumption against imprisonment applies notwithstanding the general concept of deterrence embodied in N.J.S.A. 2C:44-1a(9) and that there is a normal risk to others, including fire fighters, inherent in any arson. Therefore deterrence cannot in and of itself justify overcoming the *90 presumption against imprisonment. Cf. State v. Pavin, 202 N.J. Super. 255 (App.Div. 1985); State v. Link, 197 N.J. Super. 615, 620 (App.Div. 1984), certif. den. 101 N.J. 234 (1985). There is no indication that the arson in this case involved unusual risk. On the other hand, fire fighters have an obligation to prevent fires, and we must defer to the fact finding and balancing of aggravating and mitigating factors by the sentencing judge unless the Code sentencing guidelines are violated or his fact finding is not "based upon competent credible evidence in the record." State v. Roth, supra, 95 N.J. at 364. See also id. at 365, 368-69.
There is a distinction between the presumption of imprisonment and the presumption against it. The presumption of imprisonment stems from the legislative concern for uniformity, see State v. Roth, supra, 95 N.J. at 361, 369, and the adoption of sentencing guidelines which are offense oriented, id. at 349. Hence, the presumption of imprisonment requires a custodial sentence for a first or second degree crime unless there "would be a serious injustice which overrides the need to deter such conduct by others" because of the "character and condition of the defendant." N.J.S.A. 2C:44-1d. In other words, given the offense the defendant must be incarcerated unless there is something about his personal situation which would lead to a serious injustice when balanced against the need for deterrence. On the other hand, the presumption against imprisonment cannot be overcome without reference to both the nature and character of the offense and the history, character and condition of the defendant. The Legislature thereby recognized that there are qualitative differences among third degree and less serious offenses and the first offenders who commit them, whereas first and second degree offenses generally involve crimes against the person requiring incarceration.
Irrespective of what we would do ourselves were we the sentencing court we cannot conclude under the Roth scope of *91 review that the sentencing judge in this case violated the the sentencing guidelines or did not determine the aggravating factors based upon competent evidence. In light of the perceived lack of deterrence which would flow from any non-custodial sentence imposed on a person entrusted to prevent fires, the judge's evaluation of the particular offense committed by the particular defendant justified the conclusion that incarceration was necessary "for the protection of the public."
As the custodial sentence was imposed because the particular fire was started by a volunteer fireman, we are unprepared to find error in the sentencing judge's decision that the presumption against imprisonment was overcome.
The remaining issue deals with whether the "application of the guidelines to the facts of this case makes the sentence clearly unreasonable so as to shock the judicial conscience." State v. Roth, supra, 95 N.J. at 364-365. We recognize that once the presumption against imprisonment was overcome the "presumptive sentence" of imprisonment for a third degree crime is four years. See N.J.S.A. 2C:44-1e, -1f(1); State v. Hartye, 208 N.J. Super. 319, 327 (App.Div. 1986), certif. granted 104 N.J. 410 (1986). Nevertheless, in this case there are numerous mitigating factors. Since the building was abandoned, defendant may have reasonably believed that his conduct would not cause or threaten serious harm. See N.J.S.A. 2C:44-1b(1), (2). In addition to having no "prior conviction" for the purposes of the presumption against imprisonment, defendant has never been arrested or adjudicated a delinquent and "has led a law abiding life for a substantial period of time before the commission of the present offense." N.J.S.A. 2C:44-1b(7). He and his cohorts were drinking, and although there was no defense of intoxication, and while excessive drinking cannot excuse the conduct, the circumstances of the evening are properly understood against the background of alcohol consumption. See N.J.S.A. 2C:44-1b(4), (8). Moreover, as the sentencing judge indicated, "The defendant's conduct was the result of circumstances unlikely to recur" and "he is unlikely to commit *92 another offense." N.J.S.A. 2C:44-1b(8), (9). The probation department itself indicated that guidance and counselling were available to defendant, and "defendant is ... likely to respond affirmatively to probationary treatment." N.J.S.A. 2C:44-1b(10). Imprisonment of the defendant will "entail hardship to himself or his dependents" including his mother for whom he is the sole source of support. N.J.S.A. 2C:44-1b(11). Defendant, who was only 18 years of age at the time of the offense, may have been influenced by his codefendants, one of whom was 22 years of age. See N.J.S.A. 2C:44-1b(13). Furthermore, the State did not dispute the codefendants' claim, which was set forth in the presentence report, that defendants knew the building was "abandoned" at the time the fire was started.[2]
The mitigating factors justify substantial reduction of the presumptive sentence, and we conclude that when dealing with a first offender in circumstances where the mitigating factors are substantial and defendant is convicted of a third degree or less serious offense, the sentencing court must consider imposition of a probationary sentence, with a custodial aspect, if the aggravating factors qualitatively justify overcoming the presumption against imprisonment.
We recognize that, at present, there is a split of authority with respect to whether the presumption against imprisonment must be overcome before "imprisonment" can be imposed as a condition of probation. Compare State v. Hess, 198 N.J. Super. 322 (App.Div. 1984); State v. Hartye, supra. We express our view, for purposes of this appeal, that the presumption must be overcome before the defendant can be sentenced to a probationary term which includes a custodial *93 aspect. See State v. Partusch, 214 N.J. Super. 473, 477-479 (App.Div. 1987). Hence, where the presumption is overcome for a first offender but mitigating factors are nevertheless substantial, the trial judge should read N.J.S.A. 2C:44-1e and -1f and 2C:45-1 together and consider imposition of imprisonment as a condition of probation for first offenders charged with third degree crimes and less serious offenses, unless a more severe sentence is warranted for reasons stated at the time of sentencing.[3]
We are satisfied that this analysis, not necessarily directed to violation of the Code guidelines, is relevant to a consideration of whether the sentence shocks the judicial conscience. We are further satisfied that a state custodial sentence is "shocking" in these circumstances where there is no suggestion in the record that defendant set fire to a building other than one he thought to be abandoned. The sentence in this case is particularly "shocking" because the court had an obligation to consider the parole consequences of sentencing, see N.J.S.A. 2C:43-2e, 44-1c(2), and presumptive parole with respect to an indeterminate sentence to the Youth Correctional Institution Complex is later in time than a three year sentence to the custody of the Commissioner of Corrections. In fact, given the information available to us through the Parole Board regulations, under present guidelines defendants receiving presumptive four year sentences to the custody of the Commissioner of Corrections for arson are paroled shortly before those receiving indeterminate five year sentences to the Youth Complex. See N.J.S.A. 30:4-123.51(a), (d), (g); N.J.A.C. 10A:71-3.2, -3.3.
*94 However, here our focus is not directed to whether the custodial sentence should be three, four or five years in duration. Rather, we believe that this first offender should be placed on probation with appropriate conditions including community service, payment of restitution if the property owner suffered a loss, and alcohol counselling. Because of the need for deterrence in this case a custodial aspect of probation is warranted, but it can be fixed in such a way that, through work release or hours of service, defendant can perform community service and can continue his employment for purposes of supporting his mother and family and making restitution. See State v. Postal, 204 N.J. Super. 94, 97 (Law Div. 1985). In essence, we do not hold that imprisonment is unwarranted under the facts of this case. Rather, we hold that whatever custodial sentence is imposed should be as one of several meaningful conditions of probation (limited, of course, to 364 days in custody with parole eligibility after one third of that period, or 60 days, whichever is later). See N.J.S.A. 2C:45-1c; N.J.S.A. 30:4-123.51(a), (g).
We believe that on remand the record should be further developed with respect to the condition of the building, any plans for demolition at the time of the fire and defendant's knowledge of same. These facts may be contested at the sentencing hearing, cf. State v. Kunz, 55 N.J. 128 (1969); see also State v. Stewart, 96 N.J. 596 (1984), and they may impact the judge's conclusions concerning the custodial aspect of probation and the amount of time to be served. We believe that more facts should have been developed before the sentencing judge and that parties should have an opportunity to do so on remand. However, we are unprepared to accept the the conclusion of our dissenting colleague that under no circumstances is a custodial sentence justified or lawful.
Accordingly, the matter is remanded to the Law Division, Somerset County, for resentencing in accordance with this opinion. We do not retain jurisdiction.
*95 DREIER, J.A.D., concurring in part and dissenting in part.
Although I generally agree with the majority's inability to sustain the sentence imposed below, I must respectfully dissent from the opinion of the majority to the extent that it would impose any custodial sentence upon defendant in this case. I would determine that there was no reasonable basis upon which the trial court could have found that defendant's "imprisonment is necessary for the protection of the public," thus rebutting the presumption of nonincarceration set forth in N.J.S.A. 2C:44-1e for a first offender convicted of a third degree crime.
The trial judge based his sentence upon "the seriousness of the risk of harm and the need to deter." We must view these reasons and their factual predicates against the standards set forth in State v. Roth, 95 N.J. 334, 365-366 (1984). First, the risk of harm must be examined. This risk cannot be the general risk attendant upon any arson, since that risk is subsumed within the grading of the offense by the Legislature. Defendant cannot be punished twice for this same factor, first by standing convicted of a third degree crime and, second, by having his punishment enhanced by his creating the general risk of any arson. State v. Yarbough, 100 N.J. 627, 645 (1985), cert. den. sub. nom. Yarbough v. New Jersey, ___ U.S. ___, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986); State v. Pych, 213 N.J. Super. 446, 460-461 (App.Div. 1986); State v. Pavin, 202 N.J. Super. 255, 264-267 (App.Div. 1985); State v. Link, 197 N.J. Super. 615, 620 (App.Div. 1984), certif. den. 101 N.J. 234 (1985).
When we view the particular harm in this case, we also are left with no substantial support for the trial judge's finding that the presumption of nonincarceration had been rebutted. Although the trial judge alluded to the danger to firemen as well as their wives and children, it is clear that he could not have meant any direct danger caused by defendant's conduct. There was no danger to surrounding properties which would have forced the fire company to have attempted to extinguish the blaze, and defendant, his companions, and the fire company were apparently aware that the building had been scheduled for *96 demolition[1]. The fire, accelerated by gasoline, had engulfed the building before the company arrived, and there was no reasonable prospect of any attempt to extinguish it, thus endangering a firefighter. The only danger was hypothetical, i.e., a danger to firefighters in general from other fires if no example was made of defendants in the present case.
This brings us to the second and only proper factor which might have been considered, general deterrence. (I note parenthetically that there is no claim of the need for specific deterrence, since even the trial judge acknowledged that there was no danger of defendant again committing such a crime). There is no foundation in this record for judicial notice by the trial judge of any sustained arson activity or special danger in the general geographical area; so there is no basis for the argument that a noncustodial sentence meted out to defendant and his companions would signal laxity on the part of the criminal justice system in enforcing the laws against arson. Nor is there in the record any other special circumstances shown that would justify general deterrence outweighing all of the mitigating factors noted in the majority opinion.
The majority does state that it found the sentencing judge concerned that arsons would not be deterred if volunteer firefighters received noncustodial sentences after committing the crime. The aggravating factor of deprecation of the seriousness of an offense for violation of a breach of public trust must either constitute a breach of the bribery and corrupt influences statutes, N.J.S.A. 2C:27-1 et seq., or the misconduct in office statutes, N.J.S.A. 2C:30-1 et seq., or must reveal that a "defendant took advantage of a position of trust or confidence to commit the offense," N.J.S.A. 2C:44-1a(4). These elements are not present here, nor were they alluded to by the trial judge.
*97 I note that even with the imposition of a probationary sentence defendant and his companions have not escaped from their actions with impunity. They stand convicted of third degree crimes with the stigma and disabilities attendant upon being convicted criminals. A noncustodial sentence may impose substantial restrictions by way of additional community service (although defendant and his companions have willingly shouldered this community responsibility for years), alcohol education and the like. Also, it is suggested that defendant, because of his service as a volunteer firefighter, deserves the enhanced punishment. This makes little sense. A defendant should not be punished because of community service. If an arsonist who had not been a firefighter set the blaze would have been accorded probation, should defendant be incarcerated merely because he provided prior service to his community? Generally, such a factor is taken in mitigation, not aggravation, of punishment.
We are thus left with a simple issue: Can general deterrence alone outweigh substantial mitigating factors and warrant a custodial sentence, where the Legislature has directed a presumption of nonincarceration? I submit that a positive answer to that question would, in effect, judicially repeal the presumption of nonincarceration. The presumption would then become merely a "suggestion," since there is a positive need in all cases to deter conduct which would constitute a third degree crime. There would be no case in which a trial judge could not by the mere assertion of the need for general deterrence imprison an individual in whose favor the Legislature has directed the presumption of a noncustodial sentence.
While I agree with the reasons expressed by the majority for the reversal of the sentence imposed by the court, I cannot agree that State v. Roth either mandates or authorizes our sustaining any custodial aspect of the sentence. There is no substantial evidence in this record which supports the trial judge's failure to apply the statutory presumption. I can envision no third degree arson case where the mitigating *98 factors could be stronger and the absence of the aggravating factors more evident. I would determine that "the trial court clearly erred by reaching a conclusion that could not have reasonably been made upon a weighing of the relevant factors." State v. Roth, supra, 95 N.J. at 366.
I would reverse and remand for resentencing in accordance with the guidelines set forth in the majority opinion, but with a direction to honor the legislative presumption of nonincarceration.
NOTES
[1] According to the so-called "official version" of the facts contained in the presentence report, which was not contested at the sentencing:

On 10/13/84 police and fire departments responded to a citizen's report of a fire at 330 Davidson Ave., Franklin Twp., N.J. Upon their arrival, the unoccupied building, a wooden 1 1/2 story Cape Cod house, was totally engulfed in flames. Ptlm. Allen, Franklin Twp. P.D., one of the first to arrive on the scene, spoke with a Mr. Lukoff who lives nearby and reported the fire. Lukoff reported observing a late model maroon colored jeep with a canvas top driving slowly past the fire scene several times and at one point, stopping in front of the house just prior to his seeing the fire. Subsequently, while the fire was being extinguished, Ptlm. Lewandowski, Franklin Twp. P.D., noticed a vehicle fitting Lukoff's description, parked behind the Elizabeth Avenue Firehouse. Lukoff was transported to the firehouse and indicated that he believed the vehicle parked there was the one he observed earlier driving and stopping in front of the fire scene. A motor vehicle check revealed that the jeep belonged to a John VanNostrand (codef.). VanNostrand subsequently gave a statement to police admitting that he, Arthur Schwarz (codef.) and Daniel Gardner (def.) started the fire. All three defendants are members of the Elizabeth Avenue Volunteer Fire Department. Daniel Gardner (def.) gave a statement to police on 10/29/84. He stated that he met the two codefendants at the firehouse that evening and collectively decided to set fire to the abandoned house using gasoline and a highway flare. Def. stated that he waited in the driveway while Schwarz started the fire and VanNostrand waited in the jeep.
[2] The record was not adequately developed to support the suggestion advanced by co-defendant VanNostrand that the building was to be demolished and that defendants were aware of same. If so, those facts may have substantial impact on this case.
[3] This discussion does not mean that the "presumption of imprisonment" embodied in N.J.S.A. 2C:44-1d justifies imposition of a probationary sentence with a custodial aspect for first and second degree crimes. See State v. Partusch, supra, at 477.
[1] This fact was noted at oral argument, in a codefendant's presentence report, and was alluded to in argument before the sentencing judge.